**In the Matter of the Name Change of Bryce Jerrun QUIRK.**

**Lori A. QUIRK, Appellant,**

v.

**Kirk R. EDWARDS, Appellee.**

No. 92–761.

Supreme Court of Iowa.

Aug. 25, 1993.

Patricia N. Acton and John S. Allen, Iowa City, and Susan E. Hennen and Christine Boyer, Student Legal Interns, Iowa City, for appellant.

Kirk R. Edwards, pro se.

NEUMAN, Justice.

This is an appeal from a decree changing the name of the parties' minor child from the mother's maiden name to the father's surname. We conclude that because the change was ordered over the mother's objection, the court contravened the express provision of Iowa Code section 674.6 (1991) which requires the consent of both parents. Accordingly, we reverse.

The case reaches us on a stipulated record. Appellant Lori Quirk and appellee Kirk Edwards were married in June 1990. They separated shortly thereafter. In February 1991 Lori petitioned to dissolve the marriage. Although she had been using the hyphenated surname "Quirk–Edwards," she asked that the dissolution decree restore her maiden name, Quirk. Her daughter from a former relationship bears this name also.

Less than a month after filing for dissolution, Lori gave birth to the parties' son. Kirk was not in attendance. Lori signed the birth certificate "Lori Ann Quirk," and named the child Bryce Jerrun Quirk.

In the subsequent dissolution proceedings, Bryce's name, as well as his custody, were placed in issue. Kirk asked the court (Judge John Nahra, presiding) to change Bryce's last name from Quirk to Edwards. The court ruled that it had no authority to do so under Iowa Code chapter 598. Expressing concern, however, about Lori's failure to use her "proper married name" on Bryce's birth certificate, the judge directed Kirk to institute a change-of-name action. The court then placed Bryce in the parties' joint custody, giving Lori responsibility for his primary care. Kirk did not appeal the judge's refusal to entertain the name change as part of the custody proceeding, but he did file the petition for name change that is the subject of this appeal.

Kirk's petition under the name-change statute, Iowa Code chapter 674, stated: "The reason for the requested name change is that the child does not carry Petitioner's surname, and was improperly named by the child's mother." Lori, appearing pro se, filed a written resistance, voicing her unwillingness to consent to the change and asserting that Kirk could not

establish statutory grounds therefor under section 674.6.

The hearing on Kirk's petition took place informally in the chambers of Judge James Havercamp. After briefly questioning the parties, the judge asked Kirk's counsel to produce the dissolution decree. Upon reviewing it he noted the concerns expressed by Judge Nahra and concluded that a fact determination had already been made on the name change issue and that Kirk "was just doing what he had been previously ordered to do by Judge Nahra." He then signed a decree changing Bryce's surname from Quirk to Edwards. This appeal by Lori followed.

■ I. An action on a petition to change the name of a minor child is equitable in nature, reviewable de novo on appeal. *In re Staros*, 280 N.W.2d 409, 410 (Iowa 1979); Iowa R.App.P. 4.

■ II. Judge Havercamp apparently believed that principles of res judicata prevented Lori from successfully contesting Kirk's name-change petition. But issue preclusion requires more than identical parties and an issue previously raised; the issue must be "relevant to the disposition of the prior action ... and essential to the resulting judgment." *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). Judge Nahra did not purport to change Bryce's name, and neither his directive to Kirk nor his commentary about Lori's conduct were essential to the resulting judgment. As we have explained:

> It is a well-established rule that it is only the decretal portion of a decree that is binding and becomes res adjudicata. The recital of facts in a decree is usual and is proper, but the rights of the parties are adjudicated, not by the recital of facts, but solely by the decretal portion of the decree. It is this and this only that becomes the final judgment of the court, from which an appeal will lie.

*In re Cohen's Estate*, 216 Iowa 649, 653, 246 N.W. 780, 782 (1933).

A review of the dissolution decree reveals that Judge Nahra specifically disclaimed any authority to adjudicate the name-change issue.[1] Because the matter had not been resolved in the dissolution proceeding, Judge Havercamp erred in his finding that Lori was precluded from contesting it here.

■ III. Iowa Code section 674.6 limits the authority of the district court to change the name of a minor child except upon the consent of both parents. If only one parent consents, the court is required to set the matter for hearing upon notice to the nonconsenting parent. Iowa Code § 674.6. Waiver of the consent requirement is authorized only upon one of the following findings concerning the noncustodial parent:

1. That the parent has abandoned the child;

2. That the parent has been ordered to contribute to the support of the child or to financially aid in the child's birth and has failed to do so without good cause; or

3. That the parent does not object to the name change after having been given due and proper notice.

*Id.*

The legislature's intent to circumscribe the court's discretion in these matters is evident from the history of section 674.6. Prior to 1981, if an adult petitioner included a minor under age fourteen in a name-change petition, the court was permitted to order the name change irrespective of the failure of the other parent to consent. In its pre-amended state, the statute read:

> If both parents do not file their consent, the court shall decide the appropriateness of the change of the minor child's name.

Iowa Code § 674.6 (1979). In 1981, the legislature amended the section by eliminating this broad discretion and allowing the court to waive the consent requirement

---

1. Subsequent to Judge Nahra's decree, this court held that a minor child's name change may properly be adjudicated in a proceeding under chapter 598 utilizing a "best interest of the child" analysis. *In re Marriage of Gulsvig*, 498 N.W.2d 725, 729 (Iowa 1993).

only when one of the three conditions described above has been shown. *See* 1981 Iowa Acts ch. 201, § 3 (codified at Iowa Code § 674.6 (1991)).

Here the district court made no findings in accordance with section 674.6 because it believed, erroneously, that principles of res judicata rendered the findings unnecessary. Our de novo review of the record makes plain, however, that Lori should have prevailed on the merits.

First, no abandonment can be established because Bryce has been in Lori's custody at all times since his birth. Second, there has been no showing that Lori has failed to financially support the child as ordered. Kirk, not Lori, is subject to such an order. Finally, Lori has vigorously objected to the proposed name change, both in her written resistance to Kirk's petition and in argument before the district court and on appeal.

In summary, had the court considered the factors precedent to the entry of a name change under section 674.6, it would have found itself without statutory authority to make the change Kirk requested.

IV. Notwithstanding our belief that Kirk is entitled to no relief under chapter 674, we cannot escape the fact that much—if not all—of his current predicament stems from misguided advice from judicial officers. In order to do equity, therefore, we direct that—if Kirk so chooses—he may seek a modification of the dissolution decree on the name change issue without necessity of first showing a substantial change in circumstances. By this ruling we do not in any way intimate our view of the merits of the controversy.

**REVERSED WITH INSTRUCTIONS.**

All Justices concur except CARTER, J., McGIVERIN, C.J., HARRIS, and LAVORATO, JJ., who concur specially and SNELL, J., who dissents.

CARTER, Justice (concurring specially).

I concur in the court's conclusion that chapter 674 does not provide a vehicle for resolving the present dispute. Unlike the majority, I reach this conclusion not by looking at the statutory grounds in section 674.6, but by realizing that this is simply not a name change case. It is a challenge to the legitimacy of the name placed on the child's birth certificate in the first instance. This type of challenge parallels the issue involved in *In re Marriage of Gulsvig*, 498 N.W.2d 725 (Iowa 1993). We recognized in that case that "the mother does not have the absolute right to name the child because of custody due to birth. . . . Consequently, [the mother] should gain no advantage from her unilateral act in naming [the child]." *Id.* at 729.

The question that the present case really presents is how a legal challenge to such unilateral action is to be mounted. The *Gulsvig* decision authorized this type of challenge to be raised in a pending dissolution-of-marriage action, but conceded that there is no express grant of authority to do that in chapter 598. On further reflection, I submit that the correct view should be that the authority of a court to referee disputes over the initial naming of a child, in which the parents cannot agree, is found among the court's general equity powers. While those powers may be properly exercised in a pending dissolution action to resolve a then current dispute over a child's original name, there is no reason why they may not also be exercised in an independent action brought for the single purpose of resolving an original naming dispute. In my view, Kirk is entitled to bring an original action in the district court for a determination of the initial name of the child. It is not necessary nor legally appropriate for this court to suggest that this issue be settled by filing a modification petition in the now final dissolution action. There is no provision concerning the child's name in the original decree to modify. Nor does the matter of a change of circumstances since the original decree (the *sine qua non* for success in a modification action) have anything to do with the issues of naming the child. This is an original issue that has not before been ruled on.

Although language in the *Gulsvig* opinion suggests otherwise, I believe that it is

inaccurate to view that case as authority on the issue of *changing* the names of children whose names were properly determined in the first instance. The issue in that case, as in the present case, did not involve a change of name. It was a dispute over the determination of the original name by the unilateral action of one parent.

The specter of flooding the district courts with applications seeking to change the names of minor children in dissolution-of-marriage actions if the current name was determined by agreement of both parents is disturbing. Children's names should be quickly agreed upon, memorialized on the birth certificate, and thereafter not disturbed except as might be provided in a proceeding under chapter 674. Unfortunately, the broad language in the *Gulsvig* decision sends a different message.

I would use the present case, which comes so soon on the heels of *Gulsvig*, to disavow what I believe to have been a false signal. As we have frequently recognized, the binding force of a prior appellate opinion is coextensive with the facts upon which it is founded. *State v. Iowa Dist. Court*, 492 N.W.2d 666, 667 (Iowa 1992); *State v. Foster*, 356 N.W.2d 548, 550 (Iowa 1984); *Perfection Tire & Rubber Co. v. Kellogg Mackay Equip. Co.*, 194 Iowa 523, 530, 187 N.W. 32, 35 (1927).

McGIVERIN, C.J., and HARRIS and LAVORATO, JJ., join this special concurrence.

SNELL, Justice (dissenting).

This case was never a true chapter 674 case nor was it intended to be. Judge Nahra directed Kirk Edwards to file the petition under chapter 674 in order to correct the false certificate of birth by which Lori named the child. Judge Nahra thought this was the only procedural vehicle available to effect the equitable remedy of correcting the child's name.

In the dissolution of marriage findings of fact, Judge Nahra stated:

The petitioner testified during this hearing that her name is "Lori Ann Quirk–Edwards." However, upon review of respondent's exhibit A, it appears that in the information provided to the hospital staff to complete the certificate of live birth she indicates her name to be "Lori Ann Quirk." Exhibit A reflects that the certificate of live birth was signed by a "Lori A. Quirk," wherein she certifies that the personal information provided on the certificate is correct to the best of her knowledge and belief. It is obvious that this document is not correct and does not reflect her proper married name. As a result, the petitioner named the parties' minor child using her maiden name and not her married name, nor the father's last name.

Believing that the court in a dissolution action was not the proper forum to correct the child's name, Judge Nahra said:

Finally, this court must address the issue of respondent's request to change the name of the minor child of the parties from "Bryce Jerrun Quirk" to "Bryce Jerrun Edwards." This court does not find any authority under chapter 598 of the Code to order such change. However, given the petitioner's false certificate of live birth in naming this child, the court directs the respondent to initiate a change of name as provided for by chapter 674 of the Code of Iowa.

Three months and twenty-one days after Judge Nahra's decision, we held in *In re Marriage of Gulsvig* that the district court in a dissolution action has jurisdiction to determine the name of a minor child of the parties. *In re Marriage of Gulsvig*, 498 N.W.2d 725, 728 (Iowa 1993).

Kirk Edwards filed his petition as directed by Judge Nahra under chapter 674. Lori Quirk responded that the petition should be dismissed because she had not consented to a change of the child's name and she had not abandoned the child as required by chapter 674. Dismissing the petition would, of course, have legally solidified the name for the child unilaterally chosen by Lori, which Judge Nahra sought to have corrected.

Kirk Edwards asked in the petition that his son be named "Bryce Jerrun Edwards."

Judge Havercamp reviewed the petition, the response, and the dissolution court's findings of fact and decree of dissolution of marriage. He then heard both parties personally on their views of what name the child should bear. It is clear from Judge Havercamp's decree of name change that he viewed the proceeding under chapter 674 as merely a procedural method to effect the decision already made by Judge Nahra that the child's name should be Bryce Jerrun Edwards. The court quoted Judge Nahra's statements regarding Lori Quirk's false certificate of live birth in naming the child and Judge Nahra's direction to initiate a change of name proceeding. Judge Havercamp then stated:

> The court finds that the petitioner is entitled to the proposed name change for his son and that the petition has been on file at least thirty days.... It is therefore ordered, adjudged and decreed that the child's name shall now be Bryce Jerrun Edwards.

This case was not considered by either Judge Nahra nor Judge Havercamp as a true chapter 674 case. It was not tried as a chapter 674 case and the court made no findings at all concerning the statutory requirements to change a name under chapter 674. There are no findings that Lori Quirk abandoned the child or failed to support it, because those matters had no relevance to what Judge Havercamp was considering. Kirk Edwards made no allegations on these matters and offered no proof because these were not issues bearing in any way on the carrying out of Judge Nahra's decision to correct the child's name. The argument made on appeal by Lori that the statutory requirements of chapter 674 were not met completely ignores the reality of what Judge Nahra and Judge Havercamp were seeking to provide—a fair and legal forum for determining the child's name.

In *Gulsvig*, we decreed that a father and mother are entitled to equal treatment in choosing a name for their child. *Gulsvig*, 498 N.W.2d at 729. We also concluded that "the mother does not have the absolute right to name the child because of custody due to birth." *Id.* In the case at bar, Lori prevented the hospital from telling her husband she was at the hospital to give birth, even though he repeatedly sought this information in order to be present at the birth. Two days passed before he was told of his son's birth and that Lori had named. the child.

I recognize that a child's mother has a right equal to that of its father to choose its name. But the name should be determined by deciding what name would be in the child's best interests to have. In making that judgment, the choice should be limited to one of the surnames used by the parents during their relationship, *see Gulsvig*, 498 N.W.2d at 730 (Harris, J. dissenting), and the relationship of the noncustodial parent to the child should be given "significant consideration." *See Gulsvig*, 498 N.W.2d at 733 (Snell, J. dissenting).

Lori spurns all of these principles and seeks instead to name the child herself to the total exclusion of the child's father and his rights. I believe that her acts insult the dignity of man (the human race of men and women). *See Gulsvig*, 498 N.W.2d at 733 (Snell, J. dissenting).

This case, like *Gulsvig*, is not a change of name case; it is name case *ab initio*. The child was not legally named on the birth certificate; thus, there are no circumstances for the district court to even consider as changed. I would remand this case with directions to hear the matter anew by a petition to modify the dissolution court's decree by determining the child's name in his best interests.