RENDERED: NOVEMBER 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1393-MR

SHELBY GOLLIHUE
APPELLANT

v.
APPEAL FROM CARTER CIRCUIT COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 19-CI-00361

DEVIN MCDAVID
APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE: Shelby Gollihue ("Gollihue") appeals from an order of the

Carter Family Court granting Devin McDavid's ("McDavid") request to change

the surname of the parties' minor child. After our review, we reverse and remand.

Gollihue and McDavid are the parents of a son born on August 18,

2019. The parties were never married and were not seeing each other at the time of

their son's birth. On the child's birth certificate, his surname was listed as

Gollihue, his mother's. McDavid was not present for the child's birth, and Gollihue did not list his name as the father on the birth certificate. Furthermore, McDavid did not file an affidavit of paternity.

In October 2019, McDavid filed a petition for custody of the minor child. He requested care, custody, and control of the child. Gollihue filed an answer objecting to the relief sought citing concerns with McDavid's being granted unsupervised visitation. The family court entered a temporary order granting temporary joint legal custody with McDavid receiving limited visitation. The parties filed various motions between the temporary order and the final hearing that are not at issue here.

The family court held a final hearing on September 8, 2020. During the hearing, the court heard testimony from the parties and other witnesses. The family court heard very little testimony about the child's surname, and the record lacks any written motion regarding changing the child's surname.

On direct examination, McDavid and his counsel had the following exchange about the child's surname:

Q. Would you like to be able – for your son to be able to have your last name, McDavid?

A. Definitely.

Q. Are you asking that the court order that the name be changed?

A. Yes, ma'am.

Transcript of September 8, 2020 Hearing (Tr.) at p. 15.

During cross-examination of Gollihue, McDavid's counsel asked the

following questions:

Q. Do you have any objections to changing your son's last name to McDavid?

A. I would really like it to stay mine. If at all possible, I would really like it to stay my name.

Q. Okay. Do you have another child?

A. No, ma'am, I don't.

Q. All right. Why would you like it to stay your name?

A. Because I feel like it should be my name. I also would just really like it because I – this is just based off what – I don't want him growing up wondering, you know, like, I would, like, maybe hyphenate it. But I would really like the Gollihue part to still be on there if at all possible. And if I were to ever get married, I would still leave his name as the same.

Q. So you wouldn't mind it being, like, hyphenated, like . . . Gollihue-McDavid, something like that?

A. Maybe. I would just really like it to stay Gollihue if at all possible because all of his medical records are done, his insurance cards, his Social Security, everything is all with the last name Gollihue.

Q. Well, women change their names maybe several times during their life and all of their documents get changed, correct?

A. Yes.  But it would be a really big hassle for me to go through all the doctors, all the medical records, everything, and get everything changed.

Tr. at 80-81.

The family court took the matter under advisement and entered an order granting joint custody, timesharing which would increase if McDavid's hair follicle sample tested negative for drugs, and changing the child's surname to McDavid.  Pertinent to this appeal, the family court found "the last name of the child shall be changed to McDavid."   Record (R.) at 107.

Gollihue filed a motion to alter, amend, or vacate, which the family court denied.  This appeal followed.

On appeal, Gollihue argues the family court's order regarding the minor child's surname should be vacated because (1) she had the authority to choose his surname under Kentucky Revised Statute (KRS) 213.046(10); and (2) it is not in the best interest of the child to change his surname.

The standard of review is whether the family court abused its discretion in determining the best interests of the child would be upheld either by granting or denying a motion for the change.  *Krug v. Krug*, 647 S.W.2d 790, 793 (Ky. 1983).  The test for abuse of discretion is "'whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Santise v. Santise*, 596 S.W.3d 611, 616 (Ky. App. 2020) (quoting *Goodyear Tire*

-4-

*and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). "The determination of a child's best interests is a factual finding and the standard of review is whether the finding of fact was clearly erroneous. A finding of fact is clearly erroneous only if it is manifestly against the great weight of the evidence." *Addison v. Addison*, 463 S.W.3d 755, 765 (Ky. 2015) (citing *Frances v. Frances*, 266 S.W.3d 754 (Ky. 2008)).

KRS 213.046(10) is the applicable section regarding paternity and naming the minor child in this instance:

> The following provisions shall apply if the mother was not married at the time of either conception or birth or between conception and birth or the marital relationship between the mother and her husband has been interrupted for more than ten (10) months prior to the birth of the child:
>
> (a) The name of the father shall not be entered on the certificate of birth. The state registrar shall upon acknowledgment of paternity by the father and with consent of the mother pursuant to KRS 213.121, enter the father's name on the certificate. The surname of the child shall be any name chosen by the mother and father. If there is no agreement, the child's surname shall be determined by the parent with legal custody of the child.
>
> (b) If an affidavit of paternity has been properly completed and the certificate of birth has been filed accordingly, any further modification of the birth certificate regarding the paternity of the child shall require an order from the District Court.

(c) In any case in which paternity of a child is determined by a court order, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court.

(d) In all other cases, the surname of the child shall be any name chosen by the mother.

Here, McDavid was not present at the hospital for the child's birth, did not sign a paternity affidavit, and was not listed on the birth certificate. As the parties were not married, there was no presumed father. Thus, KRS 213.046(10)(d) applied, and Gollihue had the legal right to choose the child's surname.

For a family court to order a change in a child's surname, it should apply the following factors in determining the best interest of the child:

> [I]dentification of the child as a part of a family unit; the effect on the child's relationship with each parent; the motivation of the parties; the effect . . . the failure to change the name will have in furthering the estrangement of the child from a father exhibiting a desire to preserve the parental relationship; the age of the child and how long the child has had the current name; the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; . . . the degree of community respect associated with the present and proposed surname[;] . . . the possibility that a different name may cause insecurity or lack of identity; the use of a particular surname for a substantial period of time without objection; the preference of the child [if age and maturity permit]; difficulty the child may experience with the proposed surname; [and]

embarrassment or inconvenience that may result if the child's surname differs from that of the custodial parent. (Citations omitted.)

*Hazel v. Wells*, 918 S.W.2d 742, 745 (Ky. App. 1996) (footnote omitted) (quoting *James v. Hopmann*, 907 P.2d 1098, 1100 (Okla. Civ. App. 1995)). Additionally, Kentucky courts consider parental misconduct and "failure to support the child." *Id.* (quoting *Keegan v. Gudahl*, 525 N.W.2d 695, 699 (S.D. 1994)).

Here, the family court patently abused its discretion in granting McDavid's request to change the child's surname. The family court failed to "make any findings concerning the best interest of the child." *Id.* In fact, the family court likely did not hear enough evidence to properly consider the applicable factors. "If necessary, the court may allow additional proof so that the best interest of the child may be determined from a preponderance of the evidence. '*Only* the child's best interest should be considered . . . on remand.'" *Id.* (quoting *Keegan*, 525 N.W.2d at 700).

The family court may not require the child to bear McDavid's name without giving due consideration to the factors in *Hazel*. *Id.* "In these times of parental equality, arguing that the child of unmarried parents should bear the parental surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years." *Id.* (quoting *Bobo v. Jewell*, 528 N.E.2d 180, 185 (Ohio 1988)).

For the foregoing reasons, we reverse the portion of the family court's order changing the child's surname and remand for further proceedings applying the best interest of the child factors.

ALL CONCUR.

BRIEF FOR APPELLANT:

Tracy D. Frye
Marie E. Troxler
Russell, Kentucky

BRIEF FOR APPELLEE:

MaLenda S. Haynes
Grayson, Kentucky